Christopher Winter (WSB No. 30890)
CRAG LAW CENTER
917 SW Oak, Suite 417
Portland, Oregon 97205
Phone: (503) 525-2725
Facsimile: (503) 296-5454
Email: chris@crag.org

Brendan Cummings (CA Bar No. 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone:  (760) 366-2232
Facsimile: (760) 366-2669
Email:  bcummings@biologicaldiversity.org
Application for admission *Pro Hac Vice* pending

Miyoko Sakashita (CA Bar No. 239639)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Phone:  (415) 436-9682
Facsimile: (415) 436-9683
Email:  miyoko@biologicaldiversity.org
Application for admission *Pro Hac Vice* pending

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, a nonprofit organization;<br><br>   Plaintiff,<br><br>   v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**; **LISA JACKSON**, Administrator, United States Environmental Protection Agency; **MICHELLE PIRZADEH**, Acting Region 10 Administrator, United States Environmental Protection Agency;<br><br>   Defendants. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Administrative Procedure Act, 5 U.S.C. § 706, and Clean Water Act, 33 U.S.C. §§ 1251 *et seq*.) |

COMPLAINT – Page 1
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

# I. INTRODUCTION

1. This action challenges the failure of Defendants United States Environmental Protection Agency; Lisa Jackson, Administrator, United States Environmental Protection Agency; and Michelle Pirzadeh, Acting Region 10 Administrator, United States Environmental Protection Agency (collectively "EPA") to comply with their obligations under the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, to protect the state of Washington's ocean waters from the threat of ocean acidification.

2. Specifically, EPA violated section 303(d) of the Clean Water Act when, notwithstanding the fact that the agency had information before it indicating that Washington's ocean waters are not attaining water quality standards due to ocean acidification, EPA arbitrarily and unlawfully approved Washington's deficient list of impaired waters, a list which failed to identify these waters as impaired as required by the Act. 33 U.S.C. § 1313(d).

3. Ocean acidification, the "other $CO_2$ problem," is a growing threat to the world's seas caused by the ocean's absorption of carbon dioxide from the atmosphere. As atmospheric carbon dioxide concentrations increase, uptake of carbon dioxide by the oceans also increases. Carbon dioxide reacts with seawater altering its chemistry and lowering its pH, a standard measure of acidity. Consequently, the oceans are becoming more acidic. The major known impact of ocean acidification is that it impairs the ability of marine animals to build and maintain the protective shells and skeletons they need to survive.

4. The Clean Water Act is the nation's strongest law protecting water quality, and it aims to halt water pollution and protect the beneficial uses of water bodies. Toward those goals, section 303(d), 33 U.S.C. § 1313(d), requires each state to identify water bodies for which existing regulations are inadequate to protect water quality—resulting in a list of impaired waters. A water body known to be failing to meet any water quality standard must be included on the impaired waters list. Accordingly, an unacceptable change in pH constitutes a basis for a listing a water body.

5. EPA has acknowledged the reach of the Clean Water Act's water quality criteria

COMPLAINT – Page 2
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

for pH to the problem of ocean acidification. EPA, *Ocean Acidification and Marine pH Water Quality Criteria*, 74 Fed. Reg. 17484, 17484 (Apr. 15, 2009). According to EPA, "oceans will become more acidic over time and overall, the net effect is likely to disrupt the normal functioning of many marine and coastal ecosystems." *Id.* at 17485.

6. Acidified waters are already reaching surface waters in the Pacific, and ocean acidification is adversely impacting seawater quality along the Washington coast. As a result, marine organisms in the surface waters, water column, and sea floor along the Washington coast are being exposed to increasingly acidic waters.

7. In August 2007, Plaintiff Center for Biological Diversity submitted a letter to the Washington Department of Ecology formally requesting that Washington include its ocean waters on the list of impaired waters due to ocean acidification.

8. According to scientific monitoring of Washington's coastal waters, certain ocean waters are failing the water quality standard for pH as a likely result of ocean acidification. Since 2000, the pH of coastal waters off the Washington coast has declined by far more than 0.2 units, the acceptable pH change allowed by Washington's water quality standards. Nonetheless, in 2008, Washington published its final list of impaired waters without including any ocean waters as impaired by ocean acidification and submitted the list to the EPA.

9. The Clean Water Act vests EPA with oversight of state lists and mandates that EPA identify impaired water bodies omitted on the state's list. 33 U.S.C. § 1313(d)(2). Despite scientific evidence that Washington's ocean waters are impaired, on January 29, 2009, EPA approved Washington's deficient list without itself identifying the state's ocean waters as impaired. Thus, EPA's approval of Washington's impaired waters list violated the Clean Water Act and was arbitrary and capricious in violation of the Administrative Procedure Act.

10. Plaintiff seeks declaratory and injunctive relief requiring EPA to partially disapprove Washington's impaired waters list and add ocean waters as impaired by ocean acidification to that list.

//

COMPLAINT – Page 3
(Case No.           )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

## II.    JURISDICTION and VENUE

11. This Court has jurisdiction over this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (action against the United States), 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty), and 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments in cases of actual controversy).

12. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

13. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(e) because at least one defendant resides in this judicial district, and the violations alleged in this Complaint are affecting ocean waters in this judicial district.

## III.    PARTIES

14. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a nonprofit corporation dedicated to the preservation of biodiversity, native species, and ecosystems. The Center's Oceans Program focuses on the protection of marine species and their ocean habitats, including significant efforts to ensure the conservation of imperiled marine species. The Center has worked extensively to protect ocean ecosystems in Washington and nationwide from various threats including ocean acidification. The Center has engaged in efforts to protect endangered marine species threatened by ocean acidification such as black abalone, staghorn coral, and elkhorn coral. Moreover, the Center has taken measures to protect marine species and their habitat in Washington such as killer whales, Pacific herring, sea otters, seabirds, and other species.

15. The Center has over 40,000 members, over 1,000 of whom live in Washington and many of whom visit Washington State's coastal and marine areas, including the waters at issue in this case. These members use Washington's ocean and coastal areas for research, aesthetic enjoyment, observation, fishing, shellfishing, and other recreational, scientific, and educational activities and intend to do so in the future.

COMPLAINT – Page 4
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

16. Center members and staff have researched, observed, photographed, enjoyed the habitat, and sought protection for numerous marine species that are affected by ocean acidification in Washington and elsewhere. Center members and staff derive scientific, recreational, conservation, and aesthetic benefits from the existence of marine animals in the wild and their ocean habitat. The maintenance of a healthy marine ecosystem and water quality is important to the Center's members' interests. The Center brings this action on behalf of itself and its adversely affected members and staff.

17. Plaintiff's interests are injured by EPA's failure to list ocean waters on Washington's impaired waters list. Plaintiff's injuries are directly traceable to EPA's violations of law and the legal consequences flowing from those violations. EPA oversees state implementation of the Clean Water Act. States must identify impaired waterbodies—those failing to meet water quality standards—and establish limits on pollutants causing their impairment. 33 U.S.C. § 1313(d). Thus, ocean acidification causing non-attainment of the water quality standard for pH requires listing of ocean waters as impaired water bodies. Once listed, a state must determine a total maximum daily load of pollutants, an approach to regulating the pollution causing the impairment to the listed water segments. *Id.* If a state fails to identify a water body not attaining water quality standards or maximum loads, EPA has a duty to step in and list impaired waters and establish loads. Therefore, EPA's approval of a deficient list and failure to add ocean waters not attaining water quality standards inhibits the protection of oceans and results in legally insufficient regulation of water quality and the threats posed by ocean acidification. Accordingly, the marine species and habitats enjoyed by the Center and its members are being degraded and harmed by EPA's unlawful actions.

18. Plaintiff is also suffering procedural and informational injuries resulting from EPA's failure to identify waters impaired by ocean acidification and the consequent failure to establish total maximum daily loads and take other actions as required by the Clean Water Act once a water body is listed as impaired. EPA regulations make it clear that impaired water listings and total maximum daily loads shall be developed with public participation. 40 C.F.R. §

COMPLAINT – Page 5
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

130.7(d)(2). Due to EPA's violations of law, the Center and its members are deprived of informational and procedural benefits that would aid them in their activities to conserve ocean wildlife and habitat.

19. The aesthetic, scientific, conservation, procedural, and informational interests of the Center and its members are actual, concrete injuries suffered by the Center and its members.

20. Plaintiff's injuries can be redressed by the declaratory and injunctive relief sought herein. An order compelling EPA to disapprove Washington's impaired waters list and add ocean waters not attaining water quality standards due to ocean acidification will be more protective of seawater quality. The addition of ocean waters to Washington's list triggers a duty for Washington or the EPA to develop total maximum daily loads necessary to attain the applicable water quality standard. Therefore, adding ocean waters to the list will likely translate into controls on pollution limited to the total maximum daily load that will better protect ocean waters from ocean acidification.

21. Defendant LISA JACKSON is the Administrator of EPA and is sued in her official capacity. As Administrator of the EPA she is responsible for the agency's implementation of the Clean Water Act. Administrator Jackson has the authority and ability to remedy the harm inflicted by Defendants' actions.

22. Defendant MICHELLE PIRZADEH is the Acting Administrator of Region 10 of the EPA and is sued in her official capacity. EPA's Region 10 covers the jurisdiction of the Pacific Northwest of the United States including Washington and its ocean waters that are suffering harm from EPA's unlawful actions and inactions. Acting Administrator Pirzadeh is responsible for EPA's implementation of the Clean Water Act within her jurisdiction including ocean waters in Washington. The Regional Administrator has the authority and ability to remedy the harm inflicted by Defendants' actions.

23. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is a federal agency charged with the implementation of the Clean Water Act. EPA has the authority and ability to remedy the harm inflicted by Defendants' actions.

COMPLAINT – Page 6
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

## IV. LEGAL BACKGROUND

**A.    Clean Water Act**

24.    Congress enacted the Clean Water Act, 33 U.S.C. §§ 1251 et seq., with the express purpose of "restor[ing] and maintain[ing] the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a) (2009).  The goals of the Clean Water Act are to guarantee "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation" and to promptly eliminate water pollution. 33 U.S.C. § 1251(a).

25.    Toward those goals, the Clean Water Act requires states to establish water quality standards that serve as a basis for regulation of water pollution.  33 U.S.C. § 1313(a)-(c); 40 C.F.R. § 130.3.  These standards set out water quality goals for each water body by designating uses and setting criteria necessary to protect those uses. 40 C.F.R. § 130.3.  Water quality standards should "provide water quality for the protection and propagation of fish, shellfish and wildlife and for recreation." 40 C.F.R. § 130.3.

26.    In turn, section 303(d) of the Clean Water Act requires states to establish a list of impaired water bodies within their boundaries for which existing pollution controls "are not stringent enough to implement any water quality standard applicable to such waters."  33 U.S.C. § 1313(d).  "Each State shall assemble and evaluate all existing and readily available water quality-related data and information to develop the list."  40 C.F.R. § 130.7(b)(5). EPA's guidance for listing of impaired waters emphasizes that states should evaluate all data, and that listings may be based on small data sets, data other than site specific monitoring, and data from the public.  EPA, Guidance for 2006 Assessment, Listing and Reporting Requirements Pursuant to  Sections 303(d), 305(b) and 314 of the Clean Water Act at 33-35, 38 (2005) (EPA advised states to use the 2006 Guidance for their 2008 303(d) listings).

27.    Once a state develops its impaired waters list, EPA provides oversight and must either approve, disapprove, or partially disapprove the impaired waters list.  33 U.S.C. § 1313(d)(2).  EPA regulations mandate that a list shall be approved only if it meets the

COMPLAINT – Page 7
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

requirements that existing pollution control requirements are stringent enough to ensure waters meet all water quality standards. 40 C.F.R. § 130.7(b)(1) & (d)(2). If EPA does not approve a state's list, then it must identify those waters that should be included within 30 days. 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(2).

28. EPA must include all water bodies that fail to meet "any water quality standard," including numeric criteria, narrative criteria, water body uses, and antidegradation requirements. 40 C.F.R. § 130.7 (b)(1),(3), & (d)(2). Additionally, EPA must "identify the pollutants causing or expected to cause violations of the applicable water quality standard." 40 C.F.R. § 130.7(b)(4). EPA must also solicit and consider public comment on such listings. 40 C.F.R. § 130.7(d)(2).

29. Once a water body is listed as impaired pursuant to Clean Water Act § 303(d), the state has the authority and duty to control pollutants from all sources that are causing the impairment. Specifically, the state or EPA must establish total maximum daily loads of pollutants that a water body can receive and still attain water quality standards. 33 U.S.C. § 1313(d). States then implement the maximum loads by incorporating them into the state's water quality management plan and controlling pollution from point sources and nonpoint sources. 33 U.S.C. § 1313(e); 40 C.F.R. §§ 130.6, 130.7(d)(2). The goal of section 303(d) is to ensure that our nation's waters attain water quality standards whatever the source of pollution.

**B.   Administrative Procedure Act**

30. The Administrative Procedure Act ("APA") allows for review of agency action. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

31. The APA requires that a court set aside and hold unlawful agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," and "without observance of procedure required by law." 5 U.S.C. § 706(2).

//

COMPLAINT – Page 8
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

## V. FACTUAL BACKGROUND

**A.    Ocean Acidification**

32.    As atmospheric carbon dioxide concentrations increase due to human-caused emissions of carbon dioxide from power plants and other sources, the amount of carbon dioxide absorbed by the ocean also increases. Carbon dioxide uptake by the ocean alters seawater chemistry causing ocean waters to become more acidic, and accordingly the pH of seawater declines. This process, termed, "ocean acidification," represents one of the greatest threats to ocean ecosystems in the United States and throughout the world.

33.    The oceans have absorbed approximately 30 percent of the carbon dioxide released into the atmosphere by human activities. About three-fourths of manmade carbon dioxide emissions are from fossil fuel use, and most of the remaining emissions are due to land-use changes such as deforestation. At present, the atmospheric carbon dioxide concentration is around 386 ppm and continues to rise over 2 ppm per year, and the ocean will continue to absorb carbon dioxide until it reaches equilibrium with the atmosphere.

34.    Globally, human sources of carbon dioxide have changed the pH of oceans an average of 0.11 units since the Industrial Revolution—a 30 percent change in acidity. By the end of the century, the pH of the world's oceans are predicted to drop by another 0.3 or 0.4 units, amounting to a 100 to 150 percent change in acidity.

35.    Yet, scientists report that acidification is more acute in the ocean waters off the West Coast. A recent survey of the Pacific Ocean along the western coast of the United States, including off the coast of Washington, found that ocean acidification is affecting coastal waters at rates and magnitudes greater than scientists had previously predicted. The survey found "corrosive acidified" water upwelling onto the continental shelf along most of the West Coast.

36.    Ocean acidification poses a threat to marine animals and ecosystems. The best available science on ocean acidification suggests perilous biological consequences. Seawater chemistry is changing so rapidly that many organisms may be unable to respond and adapt.

37.    The primary known impact of ocean acidification is that it impairs the ability of

COMPLAINT – Page 9
(Case No.          )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

marine animals to build the shells and skeletons required for their survival. Usually, ocean waters are supersaturated with calcium carbonate ions that marine animals use to build and maintain their shells. Ocean acidification, however, makes these minerals less available in seawater, impairing the ability of animals to calcify their shells.

38.   A number of studies have linked ocean acidification to impaired growth in corals, oysters, urchins, mussels, and other well-known shellfish.

39.   Scientists now predict that global warming coupled with ocean acidification will destroy the world's coral reefs by mid-century. The calcification rates of reef-building corals are expected to decrease by 30-40 percent with a doubling of atmospheric carbon dioxide, and since 1990 calcification rates of corals in the Great Barrier Reef have declined by 14 percent. Cold-water corals, like those found off the coast of Washington, are believed to be even more sensitive to ocean acidification than tropical corals because they already live in conditions less favorable to calcification.

40.   Ocean acidification also decreases calcification in shellfish. A recent study found declining calcification rates of edible mussels (*Mytilus edulis*) and Pacific oysters (*Crassostrea gigas*) with increases in carbon dioxide. Experiments have also revealed that even moderate increases in atmospheric carbon dioxide had significant effects on the survival and growth of sea urchins and snails.

41.   Juvenile shellfish are especially vulnerable to ocean acidification. Most benthic fauna have a planktonic larval phase, such as oysters, when they are sensitive to carbonate undersaturation. Moreover, hatcheries in Oregon and Washington have experienced problems rearing oyster larvae in recent years that may be related to declining pH.

42.   The most alarming impact of ocean acidification, however, may be that it harms the planktonic organisms that form the basis of the marine food web. Scientists have found that several species of plankton are vulnerable to decreased calcification from ocean acidification resulting in thin and weak shells. Most species of common plankton, including pteropods, coccolithophorids, and foraminifera, have negative responses under conditions simulating ocean

COMPLAINT – Page 10
(Case No.         )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

acidification. Thus, adverse impacts on plankton could extend up the entire food web. For example, a ten percent decrease in pteropod production, a type of plankton, results in a 20 percent decline in pink salmon weight.

43. Additionally, ocean acidification can disrupt the metabolism and other biological functions in marine life. Changes in the ocean's carbon dioxide concentration result in accumulation of carbon dioxide in the tissues and fluids of fish and other marine animals, called hypercapnia, and increased acidity in the body fluids, called acidosis. These impacts can cause a variety of problems for marine animals, including difficulty with acid-base regulation, calcification, growth, respiration, energy turnover, and mode of metabolism. Studies have shown adverse impacts in squid and fish, among other animals.

44. While the impacts of ocean acidification on marine species are diverse, there is a consensus among scientists that ocean pH is declining due in large part to human sources of carbon dioxide and that ocean acidification will fundamentally alter ocean ecosystems.

45. Effects of ocean acidification in marine communities and on calcification of plankton, corals, and other species have already been observed in the world's oceans. These impacts will only worsen in time as the oceans are already committed to further reductions in pH due to elevated carbon dioxide concentrations already present in the atmosphere. Continued increases in atmospheric carbon dioxide concentrations will result in further pH reductions in the ocean leading to further adverse impacts from ocean acidification

46. While the most catastrophic impacts of ocean acidification have yet be felt, ocean acidification has arrived in U.S. waters and is an imminent water quality problem that requires immediate action by the EPA.

B. **Washington's Impaired Ocean Waters**

47. The coastal waters in Washington are designated as extraordinary quality for aquatic life uses. W.A.C. 173-201A-612. Accordingly, Washington adopted the following pH standard for marine waters of extraordinary quality:

> pH must be within the range of 7.0 to 8.5 with a human-caused variation within the above range of less than 0.2 units.

COMPLAINT – Page 11
(Case No.         )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

W.A.C. 173-201A-210(1)(f). A pH decrease of 1 unit means a 10-fold increase in the concentration of $H^+$, or acidity. Therefore, a pH change of 0.2 units is highly significant.

48. Ocean acidification is impacting coastal waters in Washington and exposing marine animals to waters that are more acidic as a result of carbon dioxide pollution. Ocean waters off the Washington coast have shown a human-caused decline in pH by greater than 0.2 units in the last decade.

49. A scientific report in the Proceedings of the National Academy of Sciences found that marine waters off the coast of Washington have changed by more than 0.2 pH units since 2000, which violates of Washington's water quality standard, W.A.C. 173-201A-210(1)(f); Timothy J. Wootton, Catherine A. Pfister, and James D. Forester. *Dynamic patterns and ecological impacts of declining ocean pH in a high-resolution multi-year dataset*. 105 Proceedings of the Nat'l Acad. of Sci. 18848-53 (2008). Wootton et al. reported that the pH of Washington's coastal waters have declined by -0.045 annually between 2000 and 2007, and subsequent data shows a continuing trend. *Id*. at 18849. This means that pH off the coast of Washington has changed 0.2 units every 4.5 years, in clear violation of Washington's water quality standard for pH.

50. Wootton et al. evaluated thousands of data samples from Tatoosh Island and found a constant decline in pH that could only be correlated with increasing carbon dioxide concentrations from anthropogenic sources. Moreover, the study found significant shifts in species that dominated the habitat, with calcifying species performing more poorly than non-calcifying species in years with low pH.

51. Home to a diversity of nesting seabirds, marine mammals, and other marine animals, Tatoosh Island lies off the point of Cape Flattery in the Strait of Juan de Fuca in Washington. The waters there are extremely productive habitat for a variety of species and are a part of a marine ecosystem nicknamed the Big Eddy. At the mouth of the Juan de Fuca Strait, the Big Eddy seasonal coastal upwelling occurs that washes nutrient rich waters along the entire Olympic Peninsula of Washington and north beyond the Canadian border

COMPLAINT – Page 12
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

52. The measurements reported by Woottton et al. likely apply to all waters in the Big Eddy. This includes ocean waters in Water Resource Inventory Areas 19, 20, 21, 22, and 24.

53. Ocean acidification is also causing degradation of ocean water quality in violation of Washington's antidegredation policy. Washington's antidegradation policy provides that existing and designated uses must be maintained and protected, and "[n]o degradation may be allowed that would interfere with, or become injurious to, existing or designated uses." W.A.C. 173-201A-310.

54. Moreover, ocean acidification is threatening the designated uses of Washington's coastal waters that provide for:

> Extraordinary quality salmonid and other fish migration, rearing, and spawning; clam, oyster, and mussel rearing and spawning; crustaceans and other shellfish (crabs, shrimp, crayfish, scallops, etc.) rearing and spawning…[and] wildlife habitat.

W.A.C. 173-201A-610. The best available science demonstrates that ocean acidification threatens the rearing of shellfish including mussels and oysters among others. Ocean acidification also threatens plankton that salmon and other marine life depend upon for foraging. Moreover, increasingly acidic waters threaten to become unsuitable habitat for many marine species.

55. In light of the fact that Washington's ocean waters do not attain water quality standards, including numeric criteria, designated uses, and antidegradation requirements, these ocean waters meet the requirements for inclusion on Washington's list of impaired water bodies.

**VI. Procedural Background**

56. Pursuant to the Clean Water Act, Washington initiated a process to update its list of impaired waters for 2008. The state put out a call for data in an effort to solicit water quality information from the public.

57. On August 15, 2007, the Center for Biological Diversity submitted a letter formally requesting that Washington include ocean waters in its jurisdiction on the list of impaired waters due to ocean acidification. Numerous peer-reviewed reports on ocean

COMPLAINT – Page 13  
(Case No.          )

Crag Law Center  
917 SW Oak, Suite 417  
Portland, Oregon 97205  
(503) 525-2725

acidification from highly-credible scientific journals accompanied the letter in support of the listing.

58. Washington's draft list completely failed to discuss or mention ocean acidification. During the public comment period on March 20, 2008, the Center submitted comments and additional data reiterating its request that ocean water segments be added to the impaired waters list.

59. Washington's final impaired waters listing decisions did not include any ocean water segments impaired by ocean acidification. On June 23, 2008, Washington submitted its list to the EPA for approval as required by the Clean Water Act.

60. While EPA considered Washington's list of impaired waters, the Center submitted additional comment letters with scientific documentation to EPA requesting that the agency partially disapprove Washington's list and add ocean waters to the list as required by the Clean Water Act, 33 U.S.C. § 1313(d)(2). On January 29, 2009, EPA approved Washington's list of impaired waters that did not include any ocean waters impaired by ocean acidification.

## VII.  CLAIMS FOR RELIEF

**(Violations of the Clean Water Act and Administrative Procedure Act)**

61. Plaintiff realleges and incorporates by reference all the allegations set forth in this Complaint.

62. EPA's approval of Washington's impaired waters list without including any ocean segments as impaired by ocean acidification violates the Clean Water Act section 303(d), 33 U.S.C. § 1313(d), and is arbitrary and capricious, and not in accordance with procedures required by law, in violation of the Administrative Procedure Act. 5 U.S.C. § 706(2)(a).

63. EPA's failure to identify ocean waters not attaining water quality standards for pH and other criteria due to ocean acidification, and EPA's failure to identify carbon dioxide as the pollutant causing the impairment violates the Clean Water Act section 303(d), 33 U.S.C. § 1313(d), and is arbitrary and capricious under 5 U.S.C. § 706(2)(a) and constitutes agency action unreasonably delayed and/or unlawfully withheld under § 706(1) of the Administrative

COMPLAINT – Page 14
(Case No.          )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725

Procedure Act, and is subject to judicial review.  5 U.S.C. §§ 701-706.

## VIII.   PRAYER FOR RELIEF

For the reasons stated above, Plaintiff respectfully requests that the Court grant the following relief.

1. A declaration that EPA violated its duties under the Clean Water Act and acted in a manner that is arbitrary, capricious, or otherwise not in accordance with law when it unlawfully approved Washington's deficient list of impaired water bodies under section 303(d) of the Clean Water Act;

2. An order compelling the EPA to add ocean waters impaired by ocean acidification caused by carbon dioxide to Washington's list of impaired water bodies;

3. Award Plaintiff its costs of litigation, including reasonable attorneys fees pursuant to the Equal Access to Justice Act; and

4. Grant Plaintiff such other relief as the Court deems just and proper.

DATE: May 14, 2009                    Respectfully submitted,

/s/ Christopher Winter
_____

Christopher Winter (WSB No. 30890)
CRAG LAW CENTER
917 SW Oak, Suite 417
Portland, Oregon 97205
Phone: (503) 525-2725
Facsimile: (503) 296-5454
Email: chris@crag.org

Brendan Cummings (CA Bar No. 193952)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Phone:  (760) 366-2232
Facsimile: (760) 366-2669
Email:  bcummings@biologicaldiversity.org
Application for admission *Pro Hac Vice* pending

COMPLAINT – Page 15                                        Crag Law Center
(Case No.           )                                              917 SW Oak, Suite 417
                                                                            Portland, Oregon 97205
                                                                            (503) 525-2725

Miyoko Sakashita (CA Bar No. 239639)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Phone: (415) 436-9682
Facsimile: (415) 436-9683
Email: miyoko@biologicaldiversity.org
Application for admission *Pro Hac Vice* pending


Attorneys for Plaintiff Center for Biological Diversity

COMPLAINT – Page 16
(Case No.            )

Crag Law Center
917 SW Oak, Suite 417
Portland, Oregon 97205
(503) 525-2725